UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN KING,

                              Plaintiff,

                v.                                    8:20-CV-0849
                                                        (FJS/DJS)
STEPHEN C. DAVIS, III, *et al.*,

                              Defendants.
_____

**APPEARANCES:**                               **OF COUNSEL:**

WOODRUFF LEE CARROLL P.C.         WOODRUFF L. CARROLL, ESQ.
Attorney for Plaintiff
334 Nottingham Road
Syracuse, NY 13210

JOHNSON LAWS, LLC                  APRIL J. LAWS, ESQ.
Attorneys for Defendants                HANNAH H. HAGE, ESQ.
646 Plank Road, Suite 205
Clifton Park, NY 12065

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

      This civil rights action seeking to recover for personal injuries arising out of Plaintiff's arrest on May 5, 2019, by members of the City of Potsdam Police Department, was initially filed on July 28, 2020. Dkt. No. 1, Compl. Presently before the Court is a Motion by Plaintiff's counsel to authorize additional discovery after the close of the discovery deadline, to allow Plaintiff's use of force expert to issue a supplemental report, and to allow the Plaintiff to identify a new physician to testify regarding topics covered

by Plaintiff's previously retained medical expert, who has since parted ways with Plaintiff. Dkt. Nos. 124, 130 & 133. That newly retained medical professional, Dr. Sarah Tabby, was also retained to provide new testimony, including opinions with regard to the Plaintiff's claimed amnesia, so that Plaintiff may request that the trial court issue a *Noseworthy* instruction to the Jury. *See Noseworthy v. New York*, 298 N.Y. 76 (1948). Defense counsel strongly objects to the Plaintiff's Motion, and argues that the requests are untimely, that they are prejudicial to Defendants, and that they are factually baseless. Dkt. Nos. 128 & 132. Oral argument on the Motion was held on November 8, 2023. At the request of the Court, the parties supplied additional documentation, including text messages, the transcript of Plaintiff's hearing held pursuant to General Municipal Law section 50-h, Plaintiff's Deposition expert reports, and affidavits. *See* Dkt. Nos. 131 & 135.

The procedural history of this case has been notable for the repeated noncompliance by Plaintiff's counsel with the federal and local rules, as well as many of the Court's Orders that were issued. *See* Dkt Nos. 19, 22, 27-1, 35, 38, 54, 55, 56, 102 & 121. After the filing of the initial Complaint there were several Motions and Requests to Amend, which ultimately culminated in the Third Amended Complaint being filed on April 19, 2022. *See* Dkt No. 4, Am. Compl.; Dkt. No. 45, Second Am. Compl.; and Dkt. No. 58, Third Am. Compl. As noted by Senior District Court Judge Frederick J. Scullin in his March 29, 2022, Decision and Order, the salient facts alleged by Mr. King in the Third Amended Complaint, the operative pleading, are as follows:

> With regard to the merits of his § 1983 excessive force claim against the individual Defendant Officers, Plaintiff's complaint contains the following allegations. Defendant Officers, members of the Village of Potsdam Police Force, "pulled over Plaintiff in a drunk driving stop . . . on 5/5/19 in the Village of Potsdam . . . ." *See* Third Amended Complaint at ¶¶ 7, 17. "Said officers or unidentified officers pulled the plaintiff from the car by his arm using excessive force." *See id.* at ¶ 8. "Said officers or unidentified officer threw him to the ground upon information and belief causing a concussion using excessive force and other injuries including replacing his entire shoulder." *See id.* at ¶ 9. "Then upon information and belief said police officers or an unidentified officer unnecessarily beat his arm while handcuffing him causing him additional injury." *See id.* at ¶ 10. Plaintiff "was severely injured during the arrest with permanent injuries resulting in loss of employment, medical bills, pain and suffering, a complete shoulder replacement and other damages." *See id* at. ¶ 12. … Furthermore, he asserts that "[t]he Defendants used excessive force against said Plaintiff during his arrest while they were removing hm [sic] from the car and handcuffing him." *See id*. at ¶ 20.

Dkt. No. 54 at pp. 9-10.

On July 5, 2022, a Rule 16 conference was held, and as a result a Uniform Pretrial Scheduling Order (UPSO) was issued that called for the completion of discovery by April 5, 2023. Dkt. No. 65. Plaintiff's expert disclosures were due under the UPSO on January 5, 2023. *Id*. On November 15, 2022, an issue arose regarding the production of videos of Plaintiff's arrest, and Defendants were directed to produce the videos on or before November 22, 2022. Dkt. No. 76. As noted at the recently held oral argument, that deadline was complied with, and the videos were produced as directed. Plaintiff's counsel claims to have had difficulty opening the videos but, because he did not consider them overly relevant to the case as it then stood, he did not pursue any relief from Defendants or the Court and, on a far later date, had a video expert make them accessible after about an hour's work.

At the request of Plaintiff's counsel, this Court extended the deadline to disclose his experts initially for 60 days, followed by a final extension of two weeks, making the expert disclosures due on March 20, 2023. Dkt. Nos. 82 & 89. Further, the Court directed that the deposition of Plaintiff's experts requested by defense counsel be held on June 19, 2023, for police procedure expert Keith Howse, and on September 12, 2023, for the medical expert, Dr. Adel Shaker. Dkt. Nos. 102 & 124-1. Next, on August 18, 2023, Plaintiff's counsel notified the Court that he was withdrawing Dr. Shaker as an expert because of a dispute concerning payment. Dkt. Nos. 108 & 124-1. Plaintiff's counsel indicated that he had retained a new expert to replace Dr. Shaker. Dkt. No. 108. The Court immediately reminded Plaintiff's counsel that he was required to make a formal motion if Plaintiff wished to submit an expert outside the time permitted in the case, and that District Court Judge Scullin had set a firm date for dispositive motions for December 12, 2023. Dkt. No. 112. Two months later, Plaintiff's counsel attempted to serve updated expert reports on defense counsel without utilizing the motion process. Dkt. No. 119. The presently pending Motion was filed on November 2, 2023. Dkt No. 124.

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Such disclosure "must be accompanied by a written report - prepared and signed by the witness," FED. R. CIV. P. 26(a)(2)(B), which must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Furthermore, parties "must make these disclosures at the times and in the

sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D).  Pursuant to Rule 37(c), if a party fails to disclose such information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

In considering whether to preclude an expert's testimony based on the failure to provide timely disclosures, courts consider (1) the reason for the failure to timely disclose, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice.  *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of N.Y.*, 837 F.2d 587, 590-91 (2d Cir. 1988)). "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007).

"The decision to strike an expert disclosure is entrusted to the discretion of the district court." *Regalado v. Ecolab Inc.,* 2016 WL 94139, at *2 (S.D.N.Y. Jan. 7, 2016). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of N.Y.*, 837 F.2d at 591. "The touchstone for determining whether to exclude an untimely expert report is whether the party opposing their admission is prejudiced." *Lore v. City of Syracuse*, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 791 (3d Cir. 1994)).

Because of the unique facts of this dispute, the Court considers each of Plaintiff's requests separately. The first issue is whether the Court should allow Plaintiff to call Dr. Sarah Marks Tabby to testify in the place of the previously retained expert, Dr. Adel Shaker. That request, in turn, requires the Court to consider the scope of the previously issued expert disclosure. Dr. Shaker's Report indicates as follows: the Plaintiff was pulled out of his vehicle by the police and thrown to the ground and handcuffed, and that during this arrest process, he suffered extensive bruises and a Hill-Sachs injury to the left shoulder, as well as an upper rib fracture and posterior dislocation of the left shoulder. *See* Dkt. No. 124-5. As a result, he underwent multiple surgical operations and physical therapy sessions, and that the injuries he sustained will affect his ability to perform his job duties as a heavy equipment operator. *Id.* Again, according to Dr. Shaker, these injuries resulted from the force used *during* his arrest on May 5, 2019. *Id*. No opinion was offered in Dr. Shaker's expert report regarding injuries sustained at any other time or any issues regarding a head injury, concussion, or amnesia. *Id.*

Although the precise dispute with Dr. Shaker is somewhat murky, it appears that involves both the issue of his rate of pay, as well as his actual attendance at the proposed expert deposition that was to occur in September 2023. According to Plaintiff's counsel, the pathologist increased his rate of pay from $400 per hour to $1500 per hour and required a $6000 fixed fee for testimony. Dkt. No. 131 at ¶¶ 6-9. Beyond that, both Plaintiff's Counsel and the medical referral company that was in charge of providing the expert, indicate that they were having difficulty communicating with the doctor, or assuring his appearance to testify. *Id*. at 14-17; Dkt. No. 131-1 at pp. 1-4. While a mere

dispute regarding payment of an expert may not justify replacement, *see Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc*., 118 F.3d at 961-962, the fact that the doctor became nonresponsive to requests to appear and testify does at least provide some legitimate justification for the present request.  *See Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, 2022 WL 7509163, at *2 (D. Conn. Oct. 13, 2022); *Pierce v. Fremar, LLC*, 2010 WL 5172883, at *2 (D.S.D. Dec. 14, 2010).  That is not to say that counsel's Motion, or his handling of this matter in general, was expeditious or timely.  Indeed, the records before the Court show that the issue of payment has been a long-standing issue, and Plaintiff's counsel was contemplating replacing Dr. Shaker as early as July 18, 2023, Dkt. No. 131-2 at p. 60, yet Plaintiff's counsel did not make the Motion seeking substitution of experts until almost four months later.

      Considering the required analysis, the Court finds that medical testimony regarding the use of force during the arrest and the opined injuries that resulted, is a significant aspect of Plaintiff's case, and that the complete bar of that testimony would cause significant prejudice.  Second, insofar as the testimony of Dr. Tabby is limited to the subject matter previously identified by Dr. Shaker in his timely disclosed report, the prejudice to the Defendants, while not eliminated, is sufficiently minimized.  The fact that Dr. Shaker and Dr. Tabby have different medical degrees could be a subject for cross-examination but does not justify barring the witness altogether.  To further ameliorate any prejudice to Defendants, the Court extends the deadline for filing dispositive motions to February 29, 2024 and directs that any deposition of Dr. Tabby shall take place no later than January 19, 2024.  Moreover, the Court finds it appropriate under the circumstances

of this case to partially shift the cost for Dr. Tabby's deposition. While normally it is the Defendant's burden to pay the reasonable costs for the time necessary to complete the expert deposition, in this case the Court directs that the cost be split: two-thirds to be paid by Plaintiff's counsel, and one-third to be paid by the defense.

Next, the Court considers the new proposed testimony contained in Dr. Tabby's Expert Report, dated October 15, 2023. Dkt. No. 124-3. In comparison with the previous one-and-one-quarter page Expert Report of Dr. Adel Shaker, the report of Dr. Tabby has substantial and material differences. First, Dr. Tabby opines that the Plaintiff has amnesia from the incident, and that this medical condition is permanent. *Id.* The opinion of the doctor was that the Plaintiff's high level of intoxication, with a BAC of .227, combined with other factors, resulted in the Plaintiff's loss of memory. Plaintiff's counsel acknowledged during oral argument that he was aware from the onset of this case of his client's lack of memory regarding some or all of the events at issue. Indeed, at the beginning of the Plaintiff's 50-h examination taken a few months after the event, Mr. Carroll, unsolicited, raised the issue of amnesia. Dkt. No. 135 at p. 7. Despite this, Plaintiff's counsel never sought an expert on this issue until after the expert deadline passed, nor has he identified any reason for his failure to do so other than the fact that he recently became aware of a line of cases in New York that appear to mandate such an expert for a plaintiff seeking a *Noseworthy* instruction to the jury in a loss of memory case.

As to this precise issue, defense counsel has identified substantial prejudice for the delayed production of this opinion. Defense counsel notes that there is a factual

inconsistency in this amnesia claim itself. Defense counsel has produced Plaintiff's deposition transcript and transcripts of the 50-h examination that was taken approximately six months after the event. At that examination Plaintiff was able to identify events that occurred up to and including the point when he was pulled from the vehicle and taken to the ground by the police. In particular, Plaintiff described being pulled over by law enforcement after he attended a birthday party; that the police car pulled up behind him; that the uniformed male police officer approached his car; that the officer asked him certain pedigree questions including asking for his license and registration; and that after some interaction he was yanked out of the car by the police officer that went to the ground, hitting his head. Dkt. No. 135 at pp. 26-33. Specifically, he identified that it was at this time that his shoulder injury was caused to occur. *Id.* at pp. 78-79 ("Q. So it was in the process of pulling you out? A. Oh, you bet."). This is consistent with what Plaintiff swore to in the Notice of Claim dated July 22, 2019, in which he stated:

> Claimant was assaulted and battered by said police officer and/or other persons unknown in the employ of the Potsdam Police who used excessive force during an arrest of the Plaintiff when said Defendants use excessive force to arrest him. Said Claimant was pulled from the car and thrown down and/or face slammed into the asphalt by said police which caused the damage described herein. [and thereafter describing the damage to include "broken ribs, arm torn out of socket, tendons ripped," etc.].

Compl. at pp 10-11.

While Plaintiff's counsel initially contended at oral argument that the Plaintiff had no memory of the incident at all, and it was a complete amnesia case, he later conceded not only that the transcript of the 50-h examination detailed the recollection of his client

before and during the event, but also that Plaintiff's counsel himself was present during that examination.

In the Court's view, Plaintiff has not established any sufficient justification to add testimony concerning Plaintiff's alleged amnesia at this late date. There was nothing that prevented Plaintiff's counsel from retaining such an expert during the discovery process, and thereby putting the defense counsel on proper notice, so that opposing experts could be retained and a response mounted. Counsel's claim that he did not understand the significance of this issue until after discovery was complete, is not an excuse that warrants reopening of discovery in any further extension of the discovery deadline.[1]

Dr. Tabby also testified with regard to the Hill-Sachs deformity, the cause of the injury, Plaintiff's course of treatment, as well as the future prognosis for the Plaintiff. Dkt. No. 124-3. Regarding the cause of the injury, the opinion of Dr. Tabby was much more expansive, and in a substantial respect different, than that of the previous expert. In particular, at the onset Dr. Tabby made note of the Plaintiff's placement in the police van while handcuffed, and therefore opined that one of the basis for the injury may well have been "(5) the forces on the left shoulder of several hard pulls on his handcuffed left arm to pull him out of the back of the seat when the officers went to get him out of the police van, (6) the forces on the left shoulder in the handcuffed position being subject to the inevitable jostling and stops and starts of the vehicle without the ability of [Plaintiff] to right himself, or to prevent himself from falling, further aggravating the dislocation, the

---

[1] The New York State Court of Appeals identified the need for medical proof to establish amnesia for a plaintiff seeking a *Noseworthy* instruction over 50 years ago. *Schechter v. Klanfer*, 28 N.Y.2d 228, 232 (1971).

tendon ruptures and tuberosity fracture." *Id.* at p. 4.  No such opinion was ever expressed by Dr. Shaker.

As noted by defense counsel, this testimony essentially changes the theory of liability from the one which was originally alleged; where the police on the scene are said to have used excessive force in pulling Mr. King from his vehicle, putting him on the ground, and handcuffing him - to essentially a negligence claim about what may or may not have happened when he was in a police transport. Of course, there has been no evidence produced by Plaintiff that he was in fact injured while in the transport vehicle, nor was this ever alleged in the notice of claim, nor the many Complaints that followed. This new theory, coupled together with the claimed amnesia, would allow Plaintiff to argue about events that may or may not have occurred at a location other than the place of arrest, and to begin discovery anew. The Court agrees that it would cause substantial prejudice to Defendants to allow such a change in a liability theory at this late stage of the case and could certainly impact Defendants' motion for summary judgment that has mostly been completed.  Defendants have already retained a use of force expert based upon the allegations previously made by the Plaintiff, and therefore any change at this late date would require an amended expert report, or a new expert altogether.  "To address these concerns and mitigate the possibility of prejudice, courts have required that the new expert's report and testimony adhere to the subjects and theories covered by the previous expert." *Nature's Plus A/S v. Nat. Organics, Inc.*, 2014 WL 12964552, at *6 (E.D.N.Y. Oct. 29, 2014) (internal quotation omitted) (citing cases).  Therefore, this aspect of Dr. Tabby's proposed testimony is likewise precluded.   And because the proposed

- 11 -

supplemental Expert Report of Keith Howse relies upon the precluded testimony of Dr. Tabby, or upon video evidence that was supplied to Plaintiff's counsel well before the close of discovery, it is also excluded.

Finally, Plaintiff is now requesting additional videos, if they exist, of the Plaintiff during his transport. This request coincides with, and appears driven by, the newly retained medical expert's Report, and the Supplemental Report of the police procedure expert, that the police failed to secure Plaintiff with a seatbelt and that he may have been injured during the ride to the hospital.  It is clear from oral argument in this case that the new requests for video of the transport was delayed based upon the Plaintiff's counsel own failure to review the previously requested and provided videos during the discovery period. The discovery deadline in this case, having been extended on several occasions, ended on April 5, 2023, and at that point counsel had not apparently viewed the videos provided. There is no reasonable justification for this lack of diligence, and therefore Plaintiff's request to reopen discovery is denied.

In sum, and after considering all the arguments of counsel, it is the Court's view that it can allow, with limitations, the last-minute replacement of Dr. Shaker with Dr. Tabby, in a way that minimizes the prejudice to the Defendants, while allowing Plaintiff to produce critical information.  Accordingly, the Court will allow Dr. Tabby to testify on the topics previously identified in the initial Expert Report of Dr. Shaker.  This would include the nature of the injury, the permanency, and the relationship between the use of force at the scene of the arrest and the injuries sustained by Plaintiff.  As noted above however, Dr. Tabby will not be allowed to testify concerning the Plaintiff's claim of

amnesia, nor can she offer an opinion concerning the hypothetical of what may have happened to Plaintiff during the transport from the police station to the hospital. The request to reopen discovery, and to supplement the Expert Report of Keith Howse, is likewise denied.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's Motion to replace Dr. Shaker with Dr. Tabby is **GRANTED** to the limited extent as set forth above, and in all other respects **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to reopen discovery in the case is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to allow for the Amended Expert Report of Keith Howse is **DENIED**; and it is further

**ORDERED**, that the deadline for filing a dispositive motion is extended to February 29, 2024; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated:   December 7, 2023
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge